CITY OF CARLSBAD *et al.* *v.* TIBBETTS *et al.*

*(Circuit Court, D. Massachusetts.  August 16, 1892.)*

1. EQUITY PLEADING—ALLEGATIONS OF CITIZENSHIP—PRAYER FOR PROCESS.
     A bill may be dismissed by the court, on its own motion, where the proper allegations as to citizenship of the parties are not contained in the introductory part, and are not pointed out by counsel elsewhere in the bill, or where the prayer for subpœna does not contain the names of the defendants, as required by the rules.

2. TRADE-MARKS—INFRINGEMENT—DECEPTIVE REPRESENTATIONS.
     Independently of any right of complainants to the exclusive use, as a trade-mark, of the name applied by them to their product, the sale by defendants of a deleterious substance, represented by the latter to be in part or in whole the same substance in which complainants are dealing, and of which they are the sole producers, and which is admittedly of a beneficial character, will be restrained.

In Equity.  Bill by the city of Carlsbad and others against S. Tibbetts and others for infringement of trade-marks.  Heard on demurrer to amended bill.  Demurrer overruled.

The introductory part of the bill, as originally filed, was as follows:

"*To the Honorable the Judges of the Said Court:*  The city of Carlsbad, a municipality of Bohemia, in the empire of Austria, Julius Schottlander, and others, to wit, Bruno Schottlander, Salo Schottlander, Augusta Oliven, Elizabeth Oliven, Dorathea Cohn, Louis Pacully, Malvine Korn, Paula Heymann, descendants and heirs of Loebel Schottlander, deceased, trading as Loebel Schottlander, citizens of Bohemia, in the empire of Austria, doing business in the city of Carlsbad, the said city of Carlsbad and Loebel Schottlander acting herein by their attorneys in fact and agents, the Eisner & Mendelson Company, of the city of Philadelphia and state of Pennsylvania, in the said United States of America, and the said Eisner & Mendelson Company, a corporation duly organized under the laws of the state of Pennsylvania, doing business in the city of Philadelphia, and in the city of New York, exclusive licensees for the United States of America for the Carlsbad water and the Carlsbad Sprudel Salz, complainants, bring this their bill of complaint against the said S. Tibbetts and W. W. Lacey, trading as S. Tibbetts & Co., S. Tibbetts, George Burwell, and W. W. Lacey, residents of said district of Massachusetts, and doing business in the city of Boston, defendants, and thereupon your orators complain, and say."

The bill contained allegations showing the acquisition by the city of Carlsbad of exclusive proprietary rights to the mineral springs at said city, and to the waters thereof, and the crystalline salts produced by evaporation of the water of the Sprudel spring, and also to the use of the name "Carlsbad," as applied to the water and salts; the acquisition by the firm of Loebel Schottlander of the exclusive right and license of bottling and exporting the water, and of exporting the Carlsbad Sprudel Salz, as manufactured and put up by the city of Carlsbad; the adoption for said salts of the distinctive name "Carlsbad Sprudel Salz," and its use upon the distinctive bottles, labels, and wrappers in which the salts were sold; that the salts had become well known under the distinctive name of "Carlsbad Salz," or "Carlsbad Sprudel Salz," and said trade-

marks, labels, and designations had come to be regarded as denoting the origin thereof, and as the product of said mineral springs; and that the Eisner & Mendelson Company had become the exclusive licensees and sole agents, under the said Loebel Schottlander, for the sale of the Carlsbad Sprudel Salz in the United States, and were fully authorized to commence actions at law or other proceedings in the name of the firm of Loebel Schottlander, and in the name of the city of Carlsbad.    The bill continued:

"Your orators further show that, since the adoption by the city of Carlsbad, and the said Loebel Schottlander, of the trade-marks hereinbefore more particularly mentioned and described, the said city of Carlsbad, Loebel Schott-lander, and said complainants' firm, proceeded, at the expenditure of much time, labor, and money, to push the sale of the said Carlsbad Sprudel Salz, so made, put up, and labeled by him and your orators aforesaid, and have thereby made extensive sales thereof in the markets of Europe and elsewhere; wherefore he and they, as well as your orators, the Eisner & Mendelson Company, are seriously injured and deprived of the profits which they would otherwise realize by reason of any other spurious or artificial salts being put up and sold under the name of 'Carlsbad,' thereby indicating such spurious and artificial articles as being the genuine product of the Carlsbad springs, or as manufactured by or at the city of Carlsbad, which is not only a fraud upon the rights of your orators, but a deception upon the community.    Your orators further show unto your honors that, notwithstanding the long and quiet use and enjoyment of the exclusive right to the name of 'Carlsbad,' as applied to any proprietary article or to the sale of the product of the said Carlsbad spring, and the long and quiet use and enjoyment of the said exclusive trade-marks of the words 'Carlsbad Sprudel Salz,' 'Carlsbad Salz,' 'Carlsbad,' or 'Carls-bader Salz,' or 'Karlsbader,' the said defendants S. Tibbetts and W. W. Lacey, trading as S. Tibbetts & Co., S. Tibbetts, George Burwell, and W. W. Lacey, well knowing the premises and willfully disregarding the rights of your orators. and contriving to injure your orators, and to deprive them of the great benefits and advantages which might and otherwise would accrue unto your orators from the exclusive sale of the products of the said springs, and the sole use of the trade-marks aforesaid used by your orators to distinguish the said goods as genuine, have recently, before the commencement of this suit, as your orators are informed and believe, without the license, consent, or knowledge of your orators, and against their will, and in violation of their rights aforesaid, and with the intention of defrauding your orators and de-ceiving the public, the community, and the trade, wrongfully and fraudulently sold and offered for sale, are now selling and offering for sale, and threaten to continue still to sell and offer for sale, in the city of Boston and elsewhere, a spurious and artificial article, designating the same as 'Carlsbad Obesity Pills,' indicating by the words, 'Prepared only by the Carlsbad Obesity Pill Com-pany, Carlsbad,' that the same are manufactured and prepared by the Carlsbad Obesity Pill Company of Carlsbad; and furthermore translating the words aforesaid into German, and thereby using the word 'Karlsbader' in the same manner in which the said word is used by the city of Carlsbad in the translation of the word into German, in the sale of the proprietary article prepared by the said city.    Your orators further aver that there is no such company, firm, or partnership at the city of Carlsbad as the Carlsbad Obesity Pill Company, but that the said company is composed of and comprises the defendants above named, who reside and do business in the city of Boston, at 176 Boylston street, under the name and firm of S. Tibbetts & Co.    Your orators further aver, on information and belief, that S. Tibbetts is the agent

of, or is employed by, George Burwell, druggist, at 176 Boylston street, Boston, and that one W. W. Lacey is interested with the said Tibbetts, and is, to a great extent, the moving spirit in the manufacture and preparation of the commodity indicated as 'Carlsbad Obesity Pills.'"

Accompanying this bill as an exhibit is filed an actual sample of the article sold by defendants as above set forth, marked "Exhibit A," with the words written upon the outside cover or box in ink, "Bought by P. E. T., June 24, 1891."

"Your orators further complain and aver that accompanying the sale of the said Carlsbad Obesity Pills, and published extensively by distribution and through the mails, is a pamphlet entitled on its front outer cover, 'How to Get Thin,' as will more fully appear by reference to a copy thereof filed herewith, and which it is prayed may be taken as part of this bill of complaint, the same being marked 'Exhibit B.' On the back outer cover of the said pamphlet is a description of the city of Carlsbad, in Bohemia, and of the constituent elements of the springs of the said city. On page 16 of said pamphlet, commencing at the seventh line from the bottom of said page, the said defendants use the following language and representation: 'They [meaning the Carlsbad Obesity Pills] are composed of the salts of the celebrated Carlsbad springs, rich in sulphate of sodium, so blended with vegetable extracts as to render them the most effective obesity pills offered to the public.' The said pamphlet furthermore contains a pictorial representation of the 'Sprudel Boiling Springs' at Carlsbad. Your orators further aver that the said pills are not composed of the salts of the Carlsbad springs, but that, on the contrary, they consist mainly of aloes, which is a drug very deleterious to health if used for any length of time. Your orators further aver that there is no such company as the 'Carlsbad Obesity Pill Company,' at Carlsbad, having the right to the use of the name of 'Carlsbad' as indicating that the said pills are manufactured in or at Carlsbad, containing any of the constituent elements of the genuine product of the Carlsbad spring; but, on the contrary, your orators aver on information and belief that the said pills are manufactured in the United States of America, most probably in the city of Boston, by the said Tibbetts, Burwell, and Lacey, or either one or all of them combined, with the express intention of selling the same under the name of 'Carlsbad,' not only with the purpose of injuring and defrauding your orators of their just rights, but with the intention of deceiving the community into purchasing the said pills under the supposition that they are manufactured at or in the city of Carlsbad, of some or all of the constituent elements or component parts of the product of the Carlsbad springs, and that in furtherance of this scheme the same are consigned to S. Tibbetts & Co., as sole agents for the United States and Canada. Your orators further aver that the said defendants, in furtherance of the scheme aforesaid, have a printed card, in colors, whereon the said pills are called 'Carlsbad Pills,' with the name 'Carlsbad Obesity Pills, Carlsbad,' which your orators aver is calculated to deceive the public into the supposition that the said pills are manufactured under or at the city of Carlsbad, or by the city of Carlsbad. Your orators aver that the same are manufactured in the United States of America. Which said acts and doings on the part of said defendants have not only been and are calculated and manifestly designed to defraud your orators, and have greatly injured them in their trade and business in the United States of America, but are manifestly calculated and designed to deceive the public, the trade, and the community, and create confusion in the minds of purchasers, and mislead and deceive the public, especially those familiar with and preferring the genuine products of the Carlsbad spring. Your orators further say that they cannot, with certainty, state the exact magnitude of their loss and injury

suffered by reason of the said wrongful acts of the defendants, but believe the same will exceed the sum of $10,000."

The bill further alleged the bringing of other suits in the circuit courts of the United States against other persons to prevent unlawful interference with said proprietary rights of complainants, in which injunctions against the defendants therein had been granted; and, after praying a discovery, an injunction, and an accounting, the bill concluded with the following prayer for process:

"May it please your honor to grant unto your orators a writ of subpœna of the United States of America, directed to the said defendants, commanding them, by the proper officers, to appear and answer this bill of complaint, and to abide and perform such order and decree in the premises as to the court shall seem meet, and be required by the principles of equity and good conscience."

Defendants demurred to the bill.

*Jerome Carty,* for complainants.

*Stephen H. Tyng,* for defendants.

PUTNAM, Circuit Judge. The following are noted by the court on its own motion: The bill in this case contains no proper prayer for subpœna, as required by the rules of the supreme court. Moreover, there are no proper allegations as to citizenship in that portion of the bill where they are customarily and properly inserted. If they appear elsewhere, the court cannot be expected to search for them, and it is for counsel to point them out. If they do not appear, the bill is defective on this account, as well as for the other reason already stated. It is therefore ordered: Bill dismissed at the August rules, 1892, with costs, as of course, and without further order on the part of the court, unless before that time complainants properly amend and pay taxable costs to that time.

Thereafter complainants amended the bill by inserting in the introductory part thereof, after the description of certain of the complainants as citizens of Bohemia, in the empire of Austria, the words, "and subjects of the emperor of Austria," and, after the description of the Eisner & Mendelson Company as a corporation duly organized under the laws of the state of Pennsylvania, the words, "and a citizen of said state of Pennsylvania," and after the word "defendants," the words, "and citizens of said state of Massachusetts," and also by changing the prayer for process therein so as to read as follows:

"May it please your honor to grant unto your orators a writ of subpœna of the United States of America, directed to the said defendants S. Tibbetts and W. W. Lacey, trading as S. Tibbetts & Co., and S. Tibbetts, George Burwell, and W. W. Lacey, commanding them, and each of them, to appear and answer this bill of complaint, and to abide and perform such order and decree in the premises as to the court shall seem meet, and be required by the principles of equity and good conscience."

Defendants also demurred to the amended bill.

PUTNAM, Circuit Judge. As this case comes before me on general demurrer, if the bill is sustainable on any ground, the demurrer must be overruled. The complainants cite nothing binding this court protecting them in the exclusive use of the word "Carlsbad." The case which most nearly approaches the contention of the complainants on this point is found originally as *Thompson* v. *Montgomery*, 41 Ch. Div. 35, (decided by the court of appeal in 1888,) and affirmed by the house of lords in [1891] App. Cas. 217. This case is noted in *Lawrence Manuf'g Co.* v. *Tennessee Manuf'g Co.*, 138 U. S. 537, 11 Sup. Ct. Rep. 396; where it seems to be regarded as an authority only to the extent that the party restrained was using the name of the town of Stone in such way as to amount to a false representation that his goods were the goods of the complainant. In *Brewing Association* v. *Piza*, 24 Fed. Rep. 149, and in *White Lead Co.* v. *Cary*, 25 Fed. Rep. 125, the court protected the name of the city which was the residence of the original manufacturer, and which he had attached to his trade-marks; but in *New York & R. Cement Co.* v. *Coplay Cement Co.*, 45 Fed. Rep. 212, Mr. Justice BRADLEY laid down very broadly the rule that the name of a town or city is one in which no person can obtain an exclusive right; and he made a striking illustration by citing the word "Havana" as attached to cigars, showing that, if a dealer in New York sells "Havana" cigars which in truth are not such, it may be fraud, but it can be no violation of a trademark. In this case he affirms his own decision in *New York & R. Cement Co.* v. *Coplay Cement Co.*, 44 Fed. Rep. 277, concurred in by Circuit Judge McKENNAN, concerning the use of the name of the town or village of Rosendale.

I fear that the rule laid down by Justice BRADLEY may be held to be the law in the United States; although to one who knows the history of the manufacture of Rosendale cement, it would seem just, on a bill filed by any cement manufacturer in that locality, in behalf of himself and other manufacturers, to protect against an injury to the honest dealer coupled with a fraud on the public. The fact that many have a common interest in the same subject-matter ought not to deprive one of the many from being protected against an injury to the whole; and, whatever difficulties there might be in a suit at law for damages in behalf of one manufacturer among many, as pointed out by Justice BRADLEY, there is no more inconvenience in proceeding in equity in such cases than on bills in behalf of parishioners to establish a general *modus*, or of commoners respecting rights of common, or of one taxpayer in behalf of all others in the town, all of which are well-recognized subjects of equity jurisdiction. It may be, as the complainants assert, that this case can be distinguished on the alleged ground that the right of the complainants to use the name of the city of Carlsbad, in connection with products of its springs, is exclusive. It is certain that, in case of the "Stone Ale" referred to, and also in the case of the "Glenfield Starch," reported as *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508, and noted in *Lawrence Manuf'g Co.* v. *Tennessee Manuf'g Co.*, 138 U. S. 550, 11 Sup. Ct. Rep. 401, the use of the name of the town was protected, under special circumstances.

On the other hand, it may well be questioned whether, if the respondents in this case should use the word " Carlsbad " in such manner, as to be free from all representation, or suggestion, that they were offering for sale the products of complainants' springs, or in connection with only the words " Obesity Pills," any injury to the complainants could be shown, or any right of theirs violated. As, however, this bill must be sustained on general demurrer, I do not now find it necessary to pass upon the broad right to the use of the word " Carlsbad " claimed by complainants. Moreover, that matter can be better determined on a presentation of all the facts at a final hearing.

This bill must be sustained on the allegation that the respondents make public use of the following representation: " They [meaning the Carlsbad Obesity Pills] are composed of the salts of the celebrated Carlsbad springs." This the bill alleges to be false. The bill further alleges that respondents' pills are composed mainly of aloes, a drug alleged to be very deleterious to health, if used for any length of time. On this point the case is narrowed down very closely. It is that the respondents are falsely and injuriously selling a deleterious substance, and are representing it to be in part or in whole the same substance, admittedly of a beneficial character, in which the complainants are dealing and of which they are the sole producers. That a direct attack like this on the trade of a manufacturer or other dealer will be restrained is an elementary proposition. It is not necessarily a branch of the law of trade-marks, but underlies and supports it. While the courts in this country have not generally accepted the rules of the English courts restraining libels directed against a man's trade or business, on the ground that those rules rest on the judicature acts, yet they will enjoin and punish untrue representations expressly made by one person that he is selling the product of another; and, even when such representations are not fraudulent, they will protect against them, as they will against any unauthorized intrusion on other property rights. It is sufficient that the court is satisfied that there is an intent on the part of the respondents to palm off their goods as the goods of the complainants, and that they persist in so doing after being requested to desist. *McLean* v. *Fleming,* 96 U. S. 245, 254. But positive proof of fraudulent intent is not required where the proof of infringement is clear. Id. 253. This principle, so far as it applies independently of the special branch of law relating to trade-marks, supports a class of cases where the use of a man's own surname is restrained, and also the results in *Thompson* v. *Montgomery, ubi supra,* and *Lee* v. *Haley,* L. R. 5 Ch. App. 155. It is fully recognized in *Nail Co.* v. *Bennett,* 43 Fed. Rep. 800, and in *Lawrence Manuf'g Co.* v. *Tennessee Manuf'g Co., ubi supra,* and is somewhat explained in Browne on Trade-Marks, § 43. Demurrer overruled, and respondents ordered to plead or answer on or before October rules next; costs to abide the final decree.