BERNARD M. DOUGLASS and Another, Suing on Their Own Behalf and on Behalf of All Other Persons Similarly Interested, Plaintiffs, *v.* NEWARK CHEESE Co., INC., and Others, Defendants.*

Supreme Court, New York County, October 8, 1934.

*Frank, Weil & Strauss* [*Samuel F. Frank* of counsel], for the plaintiffs.

*Gertrude Brown,* for the defendant Kings Highway Dairy, Inc.

*Charles H. Brown,* for the defendant Newark Cheese Co., Inc.

COTILLO, J.   This action is brought by the plaintiff, a French corporation, and one of its American sales representatives, against two American corporations seeking from this court an injunction preventing the American corporations from continuing to sell blue cows' milk cheese in the form and style of package now used by them or in any other or similar package or get-up thereof similar thereto, or likely to cause the public to be deceived thereby into believing that the same contains genuine Roquefort cheese, made of sheeps' milk and from selling or offering to sell to the public the said package containing cows' milk cheese in response to requests by the purchasers for Roquefort cheese, and from in any way directly or indirectly stating or representing that " LaFleur "

* See, also, 153 Misc. 718.

package (used by the defendants) or the Danish blue cheese is Roquefort cheese or " genuine imported Roquefort cheese " or selling the same as and for " Roquefort cheese." The plaintiffs claim that for a period of over fifty years there has been manufactured at the village of Roquefort in France, and in the immediate vicinity thereof, a cheese of distinctive appearance, taste and esteemed edible quality, known as " Roquefort cheese," which was manufactured of ewes' milk, sometimes with a slight addition of goats' milk and ripened in certain caves in the said vicinity where there existed special conditions and where there were present certain bacilli of fermentation. The cheese so produced was a soft, fat somewhat friable cheese, showing veins and dots of greenish black and white color. It has become well known throughout the world, including the United States, as " Roquefort cheese," and has commonly and generally been sold in the United States as imported " French Roquefort cheese."

On July 30, 1925, the Republic of France passed a law which is still in full force and effect, and which provides that no person may manufacture cheese calling it Roquefort cheese, unless the same has been prepared and manufactured solely from the milk of ewes in the Roquefort district of France, and unless before giving the name Roquefort to such product, he files an affidavit to the effect that the cheese so termed has been produced and complies with the terms of the said law. The plaintiff Societe Anonyme des Caves et Producteurs Rennis for many years has been engaged in the manufacture of the said Roquefort cheese and since the enactment of the law the corporate plaintiff alleges that it has duly filed a certificate of registration as a manufacturer of the said Roquefort cheese as therein provided. By reason of the fact that Roquefort cheese is produced within a limited territory, the number of manufacturers is limited and the output of such cheese is likewise limited in amount, the number of manufacturers not exceeding twenty in number with only some of them exporting the product to the United States.

The corporate plaintiff is one of the largest producers and vendors of this cheese, and for many years has been selling large quantities of the cheese for importation to the United States and particularly to the city of New York. The individual plaintiff claims that he is the representative of the corporate plaintiff in the United States and has the sole and exclusive right to sell the Roquefort cheese produced by the corporate plaintiff. Both claim that by reason of the reputation acquired by the Roquefort cheese produced by the plaintiff corporation and other manufacturers, the cheese produced by the plaintiff corporation and other manufacturers in

the district has come to be known throughout the world as " Roquefort cheese " and has been sought for by the consuming public, which has been accustomed to purchasing the product of the French producers, so that the word " Roquefort " has acquired a secondary and generally accepted meaning as indicating the cheese produced pursuant to the provisions of the above-mentioned law of France and by the French producers out of ewes' milk. The Roquefort cheese of the French manufacturers for many years has been packed in round cakes in tinfoil bearing thereon the word " Roquefort " and has been commonly sold by retailers to the consuming public by cutting sectors or slices of the cheese with the tinfoil still adhering thereto.

The plaintiffs further claim that since the enactment of said law various persons have produced at various places and sold in the city of New York and elsewhere an inferior type of cheese made of cows' milk which they have prepared in the form of round cakes packed in tinfoil and similar in appearance to the cakes and foil wrapping used by the plaintiffs and other manufacturers of the genuine Roquefort cheese. This latter cheese manufactured from cows' milk resembles in appearance to a considerable extent the genuine product manufactured by the plaintiffs, and has been known in the producing and wholesale trade as " Blue " cheese or " Danish " cheese and is sold for at least one-third less than the French product. Since the enactment of the French law relating to the manufacture of " Roquefort cheese " the sale of the " Blue " cheese has been largely increased in the United States by jobbers and retailers who have represented to the public by various artifices and devices and have led the public to believe that the said " Blue " cheese was in fact genuine imported French Roquefort cheese made of ewes' milk in conformity with the laws of France, and by means of such artifices and devices have caused the public to purchase the said " Blue " or " Danish " cheese and other imitations and substitutes of real " Roquefort " cheese, in the belief that they were purchasing the real article. It is further claimed by the plaintiffs that these practices have increased to such an extent that the sales of the genuine imported Roquefort cheese manufactured in France have decreased to a considerable extent, although the total importations and consumption of cheese has increased, and that the consuming public has purchased quantities of the " Blue " or " Danish " cheese from jobbers and retailers resorting to the device hereinafter set forth. By reason of the acts of the said jobbers and retailers, the consuming public has been confused and misled into purchasing from them the said " Blue " cheese and other imitations and substitutes, believing that the same was

genuine French Roquefort cheese and into paying therefor a price far exceeding the value of the said " Blue " cheese and approximating the price of genuine Roquefort cheese because of such belief. Since the enactment of the French law it has been the practice of various jobbers in Roquefort cheese to purchase it from the French manufacturers and to cut up the leaves or forms of Roquefort cheese so purchased into sectors or pieces of such size as to be separately salable in small quantity and to rewrap the sectors in approximately triangular shapes in tin foil. These sectors are now commonly known as " Roquefort portions." These portions bore certain lettering indicating that the portion was of genuine imported " Roquefort " cheese bearing also a description and fanciful name in the French language and a design of a triangular line border in blue ink. On January 12, 1932, the individual plaintiff was granted a trade-mark under serial No. 290655 with respect to this wording and design, and now is using it and has also granted various jobbers using the plaintiff's cheese the right to use it.

Prior to the commencement of this action the defendant Newark Cheese Co., Inc., cut up, rewrapped and sold portions of Roquefort cheese, employing in connection with the same, tinfoil bearing a triangular line border, with the word " Sante " (a French word meaning health), and certain wording and lettering. The defendant Newark Cheese Co., Inc., commenced cutting up, rewrapping and packing cheaper and inferior types of cheese consisting of Blue cheese and Danish in a form of package and wrapper design, color and arrangement and get-up as to be readily confused with the portions of genuine Roquefort cheese previously sold by the defendant Newark Cheese Co., Inc., under its Sante wrapper, using the French word " LaFleur." Both the genuine Roquefort cheese marked " Sante " and the domestic " LaFleur " were packed by the defendant Newark Cheese Co., Inc., in green boxes of the same shape and size, and of approximately the same color, so that when exhibited by retailers, the public would be readily confused and mistake one for the other. The plaintiffs further claim that the Blue or Danish cheese in portions was of very much less cost to the defendant Newark Cheese Co., Inc., than the genuine Roquefort cheese of similar weight. By reason of that fact the defendant Newark Cheese Co., Inc., was able to sell to retailers the LaFleur portions at a price considerably less than that of the Sante portions and those of other jobbers who rewrapped genuine Roquefort cheese. Although the trade, including wholesalers, jobbers and retailers, are generally informed as to the difference in quality, nature and price between genuine Roquefort cheese and Blue or Danish cheese, the general public is not so informed and the words

" Blue Cheese," have in value no significance to the consuming public as indicating that it is a different article and of lesser value than the genuine Roquefort cheese.

The plaintiffs also claim that the defendant Newark Cheese Co., Inc., deliberately prepared and contrived the LaFleur portions with the intention of, and for the purpose of supplying unscrupulous retailers with a means, method and device for cheating and defrauding the public by substituting the same for portions of genuine Roquefort cheese, and pursuant to their plan has distributed throughout the city of New York quantities of Blue or Danish cheese in the packages labeled LaFleur at a price very much lower than the price at which it sold the Sante portions. A large number of retailers, it is further alleged, to whom the defendant Newark Cheese Co., Inc., sold and distributed the Sante and LaFleur portions, took advantage of the similarity of wrapping appearance and package, so as to sell to the public LaFleur portions as the genuine Roquefort cheese at prices which would represent substantially the price of genuine Roquefort cheese at a slightly reduced price and at a much higher price than would be the fair resale price of Blue or Danish cheese if sold without deception. The claim against the defendant Kings Highway Dairy Company is that it was one of the retailers which offered for sale to the public as genuine Roquefort cheese the above LaFleur portions.

The plaintiffs claim that because of these acts on the part of the defendants they have actually misled and are continuing to mislead the public into purchasing Blue or Danish cheese in the LaFleur portions for genuine Roquefort cheese manufactured by the plaintiffs and other French manufacturers; and that this deception has caused the sale of the genuine cheese to be reduced and curtailed to a considerable extent, causing damage to the plaintiffs in the sum of $10,000, for which they have no adequate remedy at law.

The defendants admit that there has been manufactured in the vicinity of the village of Roquefort in France, a cheese which has become known as Roquefort cheese and that it has been a practice of various jobbers in Roquefort cheese to cut up the loaves of Roquefort cheese into sectors or pieces and to rewrap the same in tin foil in approximately triangular shapes. They further admit that on or about January 12, 1932, the plaintiff Douglass was granted the trade-mark. They further admit that Blue cheese is sold at a lower price than the cheese of the plaintiffs and that they sold Sante and LaFleur portions packed in similar boxes of the same size and shape. Their defense consists of the claim that although the product of the plaintiffs is a Roquefort cheese, their own product of Blue or Danish cheese is also a genuine Roquefort

cheese, and that the term Roquefort applies only to the method of making this particular form of cheese, and Roquefort being a geographical location in France the plaintiffs have no exclusive right to the use thereof.

The sole question before the court is whether the defendant Newark Cheese Co., Inc., has violated the duty of a dealer coming into a field already occupied by a rival of established reputation. Has the defendant Newark Cheese Co., Inc., by repacking its product in the package used by it and by selling at a reduced price misled the public and caused it to purchase other than genuine imported Roquefort cheese under the belief that they were buying genuine imported French Roquefort cheese? There can be no question that up to a few years ago the buying public had purchased millions of pounds of the plaintiff's product which had secured a world-wide reputation, and further that in asking for Roquefort cheese they had that product in mind. There can be no doubt that the public in buying Roquefort cheese had become accustomed to buy it in portions and become familiar with the triangular-shaped portions wrapped in tinfoil of a similar shape and coloring now used by the Newark Cheese Co., Inc.

This question of unfair competition has been passed upon by our courts at various times concerning various products and businesses. It arises because of newcomers continually entering in old-established business lines, with the thought that the easiest way to create business was to imitate an established trade-mark or the get-up of a package of a well-known product. In passing upon one of the many unfair competition cases that have been tried before me I wrote: " In deciding a case of this character, it is not always safe to generalize from what has been held to infringe or not to infringe in other cases of merchandise. Considerable attention must be given to the customs and practices of the ultimate consumer of the given type of article. In goods that are displayed, with the main appeal to the eye, the label and its get-up is perhaps as important a feature as the name itself. * * * The less unwary purchaser glancing at the label * * * would feel satisfied. A casual inspection of the label might satisfy him as to the correctness of his choice." (*Cloverdale Spring Co.* v. *Risedorph,* 144 Misc. 338.) In this case I am of the opinion that the packages sold by the defendants are a colorable imitation of the packages in which the plaintiffs' cheese is sold at retail, and when seen apart from each other would deceive a prospective purchaser into believing that he was buying the French product.

In *Reckitt & Sons* v. *Kellogg* (28 App. Div. 111) Mr. Justice RUMSEY succinctly sets forth the law as applicable to this case as

follows: "A comparison of the packages used by the two parties, respectively, shows a remarkable similarity in matters which are likely to catch the eye of the purchaser. The two-cube packages, as they are called, are put up in precisely the same color; the packages are of precisely the same size; the plaintiff's package is surrounded by a label which covers two of the long sides and the two ends, and which is printed in a peculiar combination of colors. The labels upon the defendant's package are placed in the same way; the same colors are used in a similar combination; the printing upon his package is, to a considerable extent, the same as that of the plaintiff, and while a close examination reveals several minor differences, the general appearance of the package, even when held at arm's length, is such that one might not only be very easily mistaken for the other, but is quite likely to be so mistaken. The remarkable points of similarity exist in those things which are likely to catch the eye, while as to those matters which are not at first blush apparent there is upon examination a considerable dissimilarity. * * *

" These imitations are so peculiar and striking that they cannot be the result of accident. It appears, too, that several persons have been deceived into taking the defendant's goods when they desired to have the plaintiff's and have not noticed the deception when the goods were sold to them * * *.

" A careful consideration of the evidence leads to the conclusion that the defendant's manner of business was likely to deceive persons who had been in the habit of buying the plaintiff's goods, and to mislead them into taking the defendant's goods instead, and that it was intended for that purpose, and for that reason we think the judgment of the court below should be reversed."

Even if plaintiffs originally had no trade-mark capable of exclusive appropriation under the law, the name of their product has acquired a secondary meaning as standing for an imported product from a locality in which a unique process of manufacture is used, facilitated by peculiar natural conditions. Defendants' make up or form of marketing of the product is a clear attempt to lead the ultimate consumer whose protection is perhaps the main consideration, to be deceived into purchasing defendants' product in the belief that it is plaintiffs' brand of Roquefort. This deception occurs even though defendants refrain from using that name. While there is nothing to stop them from imitating the Roquefort process, they must not indulge in acts which will deceive the public into buying the substitute as the original Roquefort.

Plaintiffs are entitled to judgment. Findings passed upon. Submit decision and judgment on notice.