### THOMAS G. PLANT CO. v. MAY MERCANTILE CO.

(Circuit Court, E. D. Missouri, E. D.   February 4, 1907.)

#### No. 5,196.

1. TRADE-MARKS AND TRADE-NAMES—FRAUDULENT USE BY ANOTHER—INJUNCTION.

A manufacturer of shoes which has adopted and uses the name "Queen Quality" as a trade-mark or name exclusively for its shoes of superior grade, selected by it and stamped with such name, is entitled to be protected in such manner of use and to an injunction restraining a purchaser of shoes of its manufacture, but which it had rejected for such grade and stamped with a different name, from advertising, offering for sale, and selling the same under the name of "Queen Quality" shoes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 76.]

2. SAME—SUIT FOR INFRINGEMENT—INJUNCTION.

Where a defendant continued to make use of complainant's trade-mark after notice to desist and contested a suit brought to compel it to do so, complainant's right to an injunction is not defeated because defendant had, in fact, ceased such use before the suit was brought, which fact was not known to complainant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 110, 111.]

In Equity.

Geo. H. Maxwell, for complainant.
Nathan Frank and Richard A. Jones, for defendant.

FINKELNBURG, District Judge. Owing to the number of cases submitted at this term and other intervening and pressing duties, I

find it impracticable to attempt to write opinions in full without unduly delaying litigation. I will, however, dictate an informal memorandum, indicating some of the reasons which have led me to the conclusion finally arrived at in this case.

No question is raised in this case as to complainant's legal right to the trade-mark "Queen Quality" at the time of the acts here complained of. That right had been previously established in the case of the Plant Company v. May Company, reported in 105 Fed. 375, 44 C. C. A. 534, and for the purpose of this case is practically admitted by the answer.

No question is raised as to the advertisement and sale of the shoes in controversy under the name of "Queen Quality" shoes; on the contrary, it is insisted by defendant that it had a right to do so. It will be perceived from the pleadings and evidence that the wrong complained of in this case is not that defendant has sold an article of its own under complainant's trade-mark, but that defendant has sold an inferior article of complainant's manufacture under a trade-name adopted by it to indicate a superior article of complainant's manufacture as in the case of Gillott v. Kettle, 3 Duer (N. Y.) 624, in which the defendant bought pens of one grade and sold them as a higher grade. In that case, Mr. Justice Bosworth, in granting an injunction, said:

"The fraud to the extent that it may be successful is twofold. The public is defrauded by being induced to buy the inferior for the superior article. The plaintiff is defrauded by an unjust destruction of confidence that his pens are put up for sale and assorted with reference to quality indicated to dealers by the labels on the boxes which contain them."

See, also, Hennessy v. White, Cox, Manual Trade-Mark Cas. 377, No. 650, and Russia Cement Co. v. Katzenstein (C. C.) 109 Fed. 314.

As to the knowledge of defendant concerning the character and grade of goods here in controversy, the facts are about as follows: The first letter with which negotiations for sale began (Rosenburg to Porter, May 23, 1905) speaks of the shoes as "Wos. Queen Quality Pat. Colt. Ox." restamped "Ladies' Favorite" and as "slightly weather cracked." The letter of Rosenburg to Hamburger Bros., May 27, 1905, says: "The imperfections are very, very slight." This letter also mentions that they are restamped "Ladies' Favorite." It is admitted that each pair of shoes was packed in a carton marked "Ladies' Favorite" on the outside. Defendant's shoe buyer (Mr. Wilkinson) who made the purchase admits that he knew the character of the Plant Company's shoes, and he knew they were very particular about their Queen Quality brand of shoes. In its advertisement of June 11th, in the St. Louis Globe, defendant admits that the shoes are stamped "Ladies' Favorite." It further appears that on June 16th, when complainant had been advised of the advertisements of Queen Quality shoes which appeared in the St. Louis newspapers, it notified defendant that the use of the name "Queen Quality" was unauthorized, and that the shoes in question were not "Queen Quality," but defendant through its counsel June 20th insisted on its right to continue the use of the name, and to sell under that name, and defendant, in fact, put another advertisement in the St. Louis Post-Dispatch after that time

(June 22, 1905) again offering these shoes for sale as "Queen Quality" shoes. Granting that in the so-called "job lot" of shoes of complainant's manufacture purchased by defendant there were some genuine Queen Quality shoes, that fact would not justify defendant in offering, advertising, and selling all the other shoes under that name. Defendant cannot use genuine Queen Quality shoes in aid of a sale of a spurious article under that name, and thereby avoid responsibility. See decree in Plant Company v. Memphis Shoe Company, U. S. Circuit Court, Western District of Tennessee (Record, p. 268). In the St. Louis Globe advertisement of June 11, 1905, there is the admission that the Queen Quality shoes offered for sale are "for obvious reasons" stamped "Ladies' Favorite." What the "obvious reasons" were is not explained. If any considerable portion were not stamped "Ladies' Favorite," presumably this admission would not have been made. I cannot escape the conviction that this advertisement was misleading, and, even if not an intentional fraud, amounts to such a constructive fraud as a court of equity is in duty bound to suppress. In other words, I cannot escape the conclusion that defendant advertised and endeavored to sell shoes as "Queen Quality" shoes which it had reason to know had theretofore been condemned by the manufacturer as not up to that standard and which had been restamped and sold by him as of an inferior grade, viz., "Ladies' Favorite."

I find therefore from the evidence in this case and the law applicable to the state of facts disclosed by the evidence (1) that complainant is entitled to have and maintain its trade-mark "Queen Quality" as applied to shoes, and to apply the same exclusively to the grade of shoes selected by it as a grade of superior quality, and to enjoy the exclusive right to its use and the manner of using it; (2) that defendant has infringed on complainant's rights aforesaid by advertising, offering for sale, and selling shoes as "Queen Quality" shoes which had been theretofore rejected by complainant and restamped "Ladies' Favoite," because not up to the standard fixed by complainant for its "Queen Quality" brand, and that defendant had knowledge of these facts.

Defendant claims that it ceased selling these shoes before the bill of complaint was filed. Aside from the fact that this could not be known to complainant, I do not think that it can defeat an injunction in a case of this kind where the defendant continued to sell after notification and has contested complainant's right throughout this suit. See Hutchinson v. Blumberg (C. C.) 51 Fed. 829. I do not think that the truth or untruth of the representations made by complainant as to the merits of the shoes called "Ladies' Favorite" should affect the determination of defendant's liability for infringing on the "Queen Quality" trade-mark. I do not think that the defense sought to be interposed that this is a suit to enforce a contract in restraint of trade, and hence in violation of the anti-trust laws, is sustained by the evidence of the law applicable thereto.

My decision therefore is that there should be a decree for an injunction and an accounting in the usual form. Such a decree may be prepared by counsel for complainant and submitted to the court.