### CHENEY BROS. v. GIMBEL BROS., NEW YORK.

(District Court, S. D. New York. May 17, 1922.)

1. **Trade-marks and trade-names and unfair competition ⬗68—Evidence held to show false representations in advertising sale of previous season's goods.**

Where a merchant had purchased at reduced price a quantity of fabrics manufactured for the previous season's trade, some of which were seconds and did not bear the manufacturer's trade-mark, advertisements by the merchant and representations by its saleswomen that the fabrics were those of the manufacturer, which ordinarily sold at more than double the price, and that they were first quality and latest patterns and colors, were false representations, which were injurious to the manufacturer.

2. **Trade-marks and trade-names and unfair competition ⬗97—Manufacturer can enjoin advertisement using his name in connection with sale of last season's goods, after false representations.**

Where a merchant had falsely advertised a sale of silks by a reputable manufacturer as being of the present season's style and colors, whereas in fact they were manufactured for the previous season, and some of them were seconds, the only protection to the manufacturer from the continued effect of the previous false representations is an injunction against the use of the manufacturer's name in advertisements of such goods, though they were in fact goods of the manufacturer, and such injunction will be issued, but the merchant will be permitted to give the manufacturer's name in answer to inquiry by customers.

In Equity. Suit by Cheney Bros. against Gimbel Bros., New York. On motion for injunction pendente lite to restrain alleged unfair competition. Injunction granted.

Harry D. Nims, of New York City, for complainant.
Rose & Paskus, of New York City, for defendant.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

AUGUSTUS N. HAND, District Judge. This is a motion for an injunction pendente lite to restrain alleged unfair competition. The defendant purchased a large amount of foulard silks of complainant's manufacture, and was selling them at $1.59 per yard. These foulards were manufactured by complainant for the season of 1921, and were not sold by them to the defendant, but purchased by the latter on April 18, 1922, from jobbers who had acquired them in the market at a low price.

Complainant had not sold them during the present season, and is accustomed to close out a season's goods before putting new styles on the market. Some of them are seconds, bearing complainant's private mark as such, and do not bear the Cheney trade-marks. Defendant advertised its sale extensively, and at first, on April 23, described the lot in a large advertisement in the New York Times, not only as "a sale of the famous foulard silks made by Cheney Bros., * * * fine quality foulards, the world's best, * * * which lends itself so gracefully to the fashions of the season," but stated in the advertisement that defendant had shopped for the identical fabrics in seven of the principal shops in Greater New York and found the current price for Cheney's foulards to run from $2.38 to $3.50. The advertisement also read: "60 designs in combinations of all the newest colors."

Moreover, the saleswomen of defendant repeatedly told customers that the foulards on sale at the latter's store were this year's patterns and of the best quality, and were ordinarily sold at $3.50. Large signs in the store also described the goods thus·

A Sensation!
22,000 Yards
Cheney's
Twill and Showerproof
Foulards
$1.59
Less than today's wholesale cost.

The Cheney foulards were also placed in the store on several tables with the Cheney signs, next a table on which were foulards of other manufacture, with no sign indicating that the other foulards were not Cheney's.

[1] I think it clear that oral and written representations have been made that would induce a purchaser to believe that: (1) All the foulards were Cheney's; (2) the foulards were Cheney's first quality; (3) the foulards were Cheney's latest patterns and colors. These representations were not true, and (3) were most injurious and prejudicial to the complainant. I cannot determine how far defendant has purchased and sold seconds in the lot as firsts, but in my opinion it has done this to some extent, and the merchandise has been so displayed that a customer might readily suppose that the foulards on all the tables were Cheney's.

[2] Complainant protested against the sale under a preliminary advertisement made on April 16, which described the sale as "sensational" and of "Cheney's foulard silks less than wholesale cost." This protest should have warned defendant not to follow up the advertising by

such language as appeared in the Times on April 23, and should also have secured protection for complainant from representations by saleswomen that the foulards were of the latest patterns and of the same kind sold by other merchants for about $3.50. Such advertising and such statements by the saleswomen in the store have been so widely diffused that no use of Cheney's name in connection with these foulards can fail to run the risk of being connected with the original misrepresentations. I think a preliminary injunction in broad terms should be granted as prayed for, together with an order enjoining defendant from using the words "Cheney," or "Cheney silks," or "Cheney foulards" in advertisements, placards, or signs. The defendant may, however, state to customers the name of the manufacturer, when inquiry is made.

Defendant's contention that the use of Cheney's name in advertising only states the truth is no answer to complainant's position. Defendant, by its past representations, has warranted the public in believing that the foulards were of this year's styles, when they were not. The only method of partially eliminating the effect of this action as a continuing misrepresentation is to abandon advertising Cheney's goods as such altogether. When a person so misrepresents the quality of the goods of another as to lead the public to suppose that the goods are of a different quality from what is being sold, the use of the manufacturer's name may be restrained altogether, in order to prevent what is in effect a continued representation that the goods are other than they really are in fact. As an alternative, the defendant might be required to state that the foulards are not of the present patterns, but this would seem to be an unnecessary hardship. Eli Lilly & Co. v. Wm. R. Warner & Co. (C. C. A.) 275 Fed. 752.

Settle order on notice.