EDMUND GOSS ET AL. *v.* THE BIRNBAUM FURNITURE COMPANY

SUPERIOR COURT         HARTFORD COUNTY         FILE NO. 111117

Memorandum filed February 17, 1959

*Jacob Bresnerkoff* and *Shipman & Goodwin,* both of Hartford, for the plaintiffs.

*Abraham S. Silver,* of New Britain, for the defendant.

COTTER, J. The Baldwin Piano Company of Ohio manufactures and sells pianos throughout the United States, including the Acrosonic piano, which it extensively promotes and advertises. Edmund Goss, doing business as the Goss Piano Company, is the sole and exclusive licensed distributor for the sale of Baldwin and Acrosonic pianos in the Hartford–New Britain area. These pianos have acquired a valuable reputation as musical instruments of excellence and have been extensively sold in the United States, including the Hartford–New Britain area, by virtue of such advertising and promotion. The Baldwin Company has expended as much as $278,500 on national advertising in one year, and in 1957 its net sales amounted to $27,000,000. The Goss Company also spends approximately $16,000 a year on newspaper advertising. Both enjoy the good will of the public.

The Birnbaum Furniture Company operates a retail business in New Britain, drawing customers from a wide area beyond the confines of the city of New Britain. It operates as a discount house, doing

a considerable amount of advertising over a broad range and attracting customers to its store by offering to sell all types of furniture, household appliances and other articles at reduced prices. One of the media it uses is "The Hartford Courant," a Sunday and weekly newspaper with a large and extensive circulation. The defendant has placed advertisements in "The Hartford Courant" stating that it offers pianos which regularly sell within a certain price range at prices within a lower or reduced price range. It further recites in its offer that they are "Brand New, Fully Guaranteed, Famous Make, Standard Keyboard" pianos. In similar print below the much larger type, it states that it features a "big selection" of pianos and includes in the listing the "Baldwin–Acrosonic"; and in the same size type an enumerated list speaks of new and used pianos— "All Low, Low Anniversary Priced." These advertisements also state that "Birnbaum's Selection of Styles, Finishes and Makes is One of the Largest in America" and then list names of manufacturers, including Baldwin Acrosonic. In truth and in fact the defendant does not have such a selection of these pianos and at the time of trial it had only two Acrosonic pianos in its store. Out of 140 pianos sold in 1957, Birnbaum made only one fully completed sale of a Baldwin Acrosonic. It purchased its first Baldwin in 1956 from a dealer in Fitchburg, Massachusetts, and three from a retail dealer in Brooklyn in 1957. It has acquired no other such pianos. On two of these pianos the defendant altered or removed the manufacturer's serial numbers. Such numbers entitle the purchaser to a registered warranty issued by the Baldwin Piano Company of Ohio for a term of ten years from date of delivery. The serial number on the piano corresponds to the warranty registration record card issued by the manufacturer. Such alteration of the serial numbers would affect

the manufacturer's full warranty, since the manufacturer's number would not tally with the retailer's. The defendant's salesmen disparaged the value, quality and construction of the pianos when shoppers sought to purchase them as advertised.

This type of advertising on its face clearly attempts to attract buyers looking for a bargain, in the first instance, and others, in the second place, who are interested in certain brands named. Persons who read such an advertisement would be clearly misled from the manner in which it is set up and printed unless they were thoroughly acquainted and experienced in analyzing and understanding such a scheme of merchandising or advertising layout. In many cases the Acrosonic piano, at regular retail, sells for more than the regular price mentioned, and the defendant has been unwilling to sell such a piano at the highest price set forth under the reduced price range printed in the advertisement. This was admitted by Myron Birnbaum, vice president of the defendant corporation, in one instance where the range advertised was $397 to $599. He admitted he would not sell any one of the two pianos he had for $599. In attempting to buy such a piano, a shopper has been obliged to pay $889.95, which with certain taxes amounts to a gross price of $916.65. In one other case the complete price amounted to $695.25.

The defendant is not forced to purchase and sell the goods of the Baldwin Piano Company. If it chooses to do so, it must act in a manner that will not injure the plaintiffs. In cases of this nature, involving unfair competition, the essence of the wrong usually concerns sale of one article for another or an attempt to palm off one for another; *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.,* 220 U.S. 446; 52 Am. Jur. 565 n.16; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U.S. 118; but

it has been held that the competitor is unfair if he puts a cut price upon goods "and at the same time [makes] statements regarding the goods so offered for sale which are inaccurate and misleading." *B.V.D. Co.* v. *Davega-City Radio,* 16 F. Sup. 659, 662; *Cheney Bros.* v. *Gimbel Bros.,* 280 Fed. 746. "An unfair competitor who appropriates good will, which has cost him nothing, is in a position to offer merchandise at attractive prices, thus securing an unfair advantage." 2 Nims, Unfair Competition & Trade-Marks (4th Ed.) p. 975, § 300. Price cutting is permitted to a retailer despite the fact it results in injury to a wholesaler or competitor. *Doubleday, Doran & Co.* v. *R. H. Macy & Co.,* 269 N.Y. 272. But it is unfair competition to do so and at the same time make "statements regarding the goods so offered for sale which are inaccurate and misleading."

An injunction will accordingly issue, under penalty of $500, restraining the defendant corporation from representing in any newspaper advertisement that it has Baldwin Acrosonic pianos for sale other than what it actually has in stock; and from advertising prices other than those it knows to be the true regular prices of such pianos; and from advertising or offering to sell such pianos at a price for which it will not in fact sell them; and from otherwise advertising in a deceptive and misleading way the true facts of its inventory and the prices at which it will sell such pianos to a customer.