REVLON, INC., a Delaware corporation, Plaintiff,

v.

REGAL PHARMACY, INC., a Michigan corporation et al., Defendants.

Civ. A. No. 19059.

United States District Court
E. D. Michigan, S. D.

Dec. 19, 1961.

Philip T. Van Zile, II, Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., Leroy G. Vandeveer, Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., for plaintiff.

Myron N. Krotinger, Mendelsohn, Krotinger, Lane, Santora & Shaw, Cleveland, Ohio, for defendants. Joseph W. Louisell, Detroit, Mich., of counsel.

FREEMAN, District Judge.

This is a motion for summary judgment filed by defendants in an action involving two related claims brought by the plaintiff to enjoin the defendants from buying or selling plaintiff's hair spray product known as professional "Satin-Set" based on a claim of unfair competition, and also seeking injunctive relief against defendants in a claim of inducing plaintiff's distributors having such product for sale to breach their franchise agreements.

Plaintiff is engaged in the business of producing and selling cosmetic and beauty preparations under the registered trade name "Revlon". One of such products is a hair spray known as "Satin-Set", which name is also a registered trade-mark of plaintiff. It is the claim of plaintiff that "Satin-Set" hair spray is manufactured under two different formulae, one of which products known as consumer "Satin-Set" is for home use and the other known as professional "Satin-Set" is made only for use in beauty shops and beauty schools, because it produces an undesirable matting effect of the hair when used by others than trained operators.

These two products are marketed by plaintiff under a dual system of distribution. Professional "Satin-Set" is sold by plaintiff only to so-called salon jobbers under an agreement that such product will not be resold except to beauty shops and beauty schools, nor to such shops and schools which sell such product to any person other than the consuming public. Consumer "Satin-Set" is sold by plaintiff to both the salon jobbers for resale by beauty shops and schools for consumer use and also to agency franchise dealers for resale by various types of retail outlets such as drug stores and department stores which sell only to the con-

suming public. The salon jobbers' franchise agreements also provide that the distributor will not sell Revlon products at less than minimum resale prices set by plaintiff in states having Fair Trade Acts, nor to beauty shops and beauty schools which resell such products at less than minimum retail prices, as provided under plaintiff's Fair Trade agreements in Fair Trade States such as Michigan and Ohio where the sales in question occurred.

The defendant Shulman is President of and in control of all of the corporate defendants. The defendant Regal Pharmacy, Inc., was one of plaintiff's agency franchise distributors for the resale of plaintiff's products at its retail stores. None of the other defendants had any franchise agreement with plaintiff for the sale of any of plaintiff's products.

Plaintiff has spent large sums of money in extensively advertising its "Satin-Set" hair spray to the consuming public and claims that it has established substantial good will and a valuable favorable reputation for such product.

Professional "Satin-Set" was sold by plaintiff to its salon distributors in containers bearing its registered trademarks and names "Revlon" and "Satin-Set" and upon which containers plaintiff imprinted the cautionary statements that such hair spray was "Scientifically Formulated for Professional Use Only" and "Not for Resale", and the labels on some of such cans contain printed notices that they were "Not for Home Use". The containers used in marketing consumer "Satin-Set" did not bear the foregoing statements and had printed thereon detailed instructions for use by the consumer, which instructions do not appear on the professional "Satin-Set" containers.

Defendants admittedly purchased 646 cans of plaintiff's professional "Satin-Set" hair spray and resold same at its retail stores to the consuming public. Plaintiff claims that a larger quantity of such hair spray was so sold by the defendants, but this claim is without evidentiary support. It is undisputed that prior to the filing of this suit, the defendants were aware of the printed restrictions against resale on the professional "Satin-Set" containers and that the plaintiff informed the defendant Shulman to stop selling such product, which sales by the defendants nevertheless continued, even after the suit was filed.

The only evidence before the Court on plaintiff's claim of inducing its distributors to breach their franchise agreements is that the defendants procured the containers of professional "Satin-Set" in question from sources other than plaintiff's franchised dealers. During oral arguments plaintiff conceded there was no issue of fact as to that claim and, therefore, the only remaining question involved on this motion is plaintiff's claim of unfair competition.

Defendants' motion for summary judgment is filed pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A., which in pertinent part provides:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[1, 2] The courts have taken a cautious approach in applying Rule 56. It is well established that on a motion for summary judgment, the burden is upon the moving party to establish the lack of a triable issue of fact and the right to judgment as a matter of law. It is equally well established that in considering such a motion, the party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the court is required to give that party the benefit of all favorable inferences that may be drawn from the evidence. McHenry v. Ford Motor Company (C.A.6), 269 F.2d 18.

"The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined. The hearing on the motion is not a trial. * * *" 3 Barron and Holtzoff, Federal Practice and Procedure (Rules Ed.) 1234, pp. 122, 123.

In the case of Union Transfer Co. v. Riss & Company (C.A.8), 218 F.2d 553, the court, in construing Rule 56, at p. 554, said:

"That rule places the burden of demonstrating the nonexistence of any genuine fact issue upon the moving party and requires that all doubts be resolved against him. Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318, 322. A surmise, no matter how reasonable, that a party 'is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them.'" (Citing cases.)

With respect to plaintiff's claim of unfair competition, plaintiff contends that its professional "Satin-Set" hair spray, when used by an untrained consumer, gives unsatisfactory results and is, therefore, from the standpoint of the consumer, a product inferior to its consumer "Satin-Set" product, and consequently such use injures plaintiff's good will and favorable reputation for its products. Plaintiff further contends that the defendants, in offering professional "Satin-Set" for sale to the consuming public at its retail stores, thereby misrepresented that it was fit for consumer use, and in view of the similarity of packaging and trade-marks thereon, purchasers at defendants' retail stores were led to believe that when they purchased professional "Satin-Set", they were, in fact, buying consumer "Satin-Set", which, in effect, amounted to a palming-off by defendants of an inferior product of plaintiff for that of a superior product of plaintiff. Hence plaintiff argues that such marketing of plaintiff's professional "Satin-Set" by defendants constituted unfair competition and would necessarily result in injury to plaintiff's good will and favorable reputation for all its products, which conduct on the part of defendants is subject to injunctive relief.

Defendants contend that all of plaintiff's "Satin-Set" hair spray is made pursuant to the same formula and that there is no essential difference in the quality of professional "Satin-Set" and consumer "Satin-Set", although for the purpose of this motion defendants do not dispute plaintiff's claim of a difference in the formulae of these two products.

Defendants also contend that the mere sale of plaintiff's unadulterated professional "Satin-Set" at its retail stores in plaintiff's original containers with original labels thereon involves no misrepresentation; that the public cannot possibly be deceived; that plaintiff cannot prove any specific loss or injury; and that defendants' marketing of plaintiff's professional "Satin-Set" does not constitute palming-off or any other actionable form of unfair competition. It is the further contention of defendants that when a manufacturer sells two or more products under the same trademark, it has by its own act created the possibility of confusion, and absent any fraudulent representation and proof of actual harm, there is no basis for equitable relief.

Finally, defendants assert as affirmative defenses that plaintiff's franchise agreements with its salon distributors used in marketing professional "Satin-Set", as hereinbefore set forth, are illegal per se as being in restraint of trade and are also utilized by plaintiff to boycott defendants and others who refuse to maintain plaintiff's suggested retail prices for its products, in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq. and the Michigan Restraint of

Trade Acts, Comp.Laws 1948, § 445.701 et seq., and hence such contracts are not enforceable and plaintiff is not entitled to the injunctive relief sought in this case.

Plaintiff has referred to the marketing of plaintiff's professional "Satin-Set" product by defendants as "palming-off" or something closely akin thereto which is actionable as a form of unfair competition. Defendants argue that the palming-off doctrine of unfair competition is limited to confusion of source situations where one vendor sells his goods as being those of another. The acts of defendants complained of, as herein set forth, do not constitute "palming-off" in the traditional concept of that term as a form of unfair competition. However, the real question on this point is not whether such conduct on the part of the defendants falls squarely within the palming-off doctrine of unfair competition, but rather whether such conduct constitutes any actionable form of unfair competition.

Jurisdiction of this case is based on diversity of citizenship and the acts complained of having occurred in Michigan and Ohio, the issues involved in this motion must be determined by the laws of those States. Both plaintiff and defendants have cited and relied on a number of Michigan cases, but cite only a few cases by the Ohio courts, the latter dealing largely with general principles of equitable relief. Defendants claim that Ohio law and Michigan law embrace the same principles as to injunctive relief in the instant case.

In Cheney Bros. v. Gimbel Bros. (D.C. S.D.N.Y.), 280 F. 746, the court, in granting injunctive relief, said (p. 748):

"When a person so misrepresents the quality of the goods of another as to lead the public to suppose that the goods are of a different quality from what is being sold, the use of the manufacturer's name may be restrained altogether, in order to prevent what is in effect a continued representation that the goods are other than they really are in fact."

In Burlington Mills Corporation v. Roy Fabrics (D.C.S.D.N.Y.), 91 F.Supp. 39, a case in which defendant was temporarily enjoined from palming-off its goods as those of the plaintiff and from falsely representing plaintiff's inferior line as being plaintiff's superior line, the court at p. 46 said:

"The law is clear that the sale of goods of one manufacturer for those of another is unlawful. * * And this law encompasses the defendants' practice of disposing of the Burlington 'seconds' as 'firsts.' See Cheney Brothers v. Gimbel Brothers, D.C.S.D.N.Y.1922, 280 F. 746."

In Thomas G. Plant Co. v. May Mercantile Co., (C.C.E.D.Mo.), 153 F. 229, a case in which the defendant represented that plaintiff's second line of shoes was plaintiff's first line, the court in granting injunctive relief said (p. 230):

"It will be perceived from the pleadings and evidence that the wrong complained of in this case is not that defendant has sold an article of its own under complainant's trade-mark, but that defendant has sold an inferior article of complainant's manufacture under a trade-name adopted by it to indicate a superior article of complainant's manufacture as in the case of Gillott v. Kettle, 3 Duer (N.Y.) 624, in which the defendant bought pens of one grade and sold them as a higher grade. In that case, Mr. Justice Bosworth, in granting an injunction, said:

" 'The fraud to the extent that it may be successful is twofold. The public is defrauded by being induced to buy the inferior for the superior article. The plaintiff is defrauded by an unjust destruction of confidence that his pens are put up for sale and assorted with refer-

ence to quality indicated to dealers by the labels on the boxes which contain them.'"

Although the instant case does not involve the precise situation in Plant, nevertheless the defendants are allegedly selling an inferior consumer product of plaintiff as a superior consumer product of plaintiff, and the principle of Plant above referred to applies.

This rule has also been applied in the case of Russia Cement Co. v. Katzenstein (C.C.S.D.N.Y.), 109 F. 314, a case in which defendants bought plaintiff's inferior brand of glue in bulk quantities, packaged and resold it, misrepresenting that it was plaintiff's superior grade.

The principle that selling another's inferior line of products under the misrepresentation that they are that person's superior line constituted an actionable form of unfair competition was recognized by the House of Lords in Spaulding v. Gamage (1914), 110 LT 530, 31 RPC 125, where the court at p. 139 said:

"* * * the proposition that no one has a right to represent his goods as the goods of somebody else must, I think, as has been assumed in this case, involve as a corollary the further proposition, that no one, who has in his hands the goods of another of a particular class or quality, has a right to represent these goods to be the goods of that other of a different quality or belonging to a different class. Possibly, therefore, the principle ought to be restated as follows: A cannot, without infringing the rights of B, represent goods which are not B's goods or B's goods of a particular class or quality to be B's goods or B's goods of that particular class or quality. The wrong for which relief is sought in a passing off action consists in every case of a representation of this nature."

In the case of Champion Spark Plug Corp. v. Sanders (C.A.2), 156 F.2d 488 (affirmed 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386), the defendant reconditioned used spark plugs originally manufactured by the plaintiff and sold same to the public without clearly indicating they were reconditioned. The court recognized that this fact situation gave rise to a cause of action of unfair competition because of possible deception to the public and at p. 491 of 156 F.2d said:

"While no proof was offered that the defendants' plugs were actually 'palmed off' as new and original Champion plugs or that any purchaser was induced to buy those plugs relying on a representation that they were as servicable as new ones, yet the kind of merchandising employed might enable dealers to 'palm off' defendants' plugs as new ones and thus to mislead the public. The decisions in Federal Trade Commission v. Winsted Co., 258 U. S. 483, 494, 42 S.Ct. 384, 66 L.Ed. 729; Warner Co. v. Lilly Co., 265 U.S. 526, 530, 44 S.Ct. 615, 68 L.Ed. 1161; and G. H. Mumm Champagne Co. v. Eastern Wine Corp., 2 Cir., 142 F.2d 499, require a finding of unfair competition under such circumstances, irrespective of any proof of 'palming off' by the defendants."

The reasoning applied by the courts in granting relief in those cases involving the traditional concept of palming-off one's goods as those of another as a form of unfair competition applies equally to situations such as that in the instant case where one person sells an inferior product of another as the other's superior product. The gist of the action in both situations, as in all unfair competition cases, is fraud, and the gist of the charge is that the public is so misled that plaintiff loses some trade by reason of the deception. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 14, pp. 247–248.

The defendants in their several briefs and during oral arguments, in support

of their contention that the transactions complained of by plaintiff are not actionable, placed considerable reliance on the following cases: Champion Spark Plug Corp. v. Sanders, supra, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; John D. Park & Sons Co. v. Hartman (C.A.6), 153 F. 24, 12 L.R.A.,N.S., 135; and Revlon, Inc. v. Crest Distributors, 19 Misc.2d 426, 190 N.Y.S.2d 745.

The situation in the Champion Spark Plug case has already been pointed out and the court granted injunctive relief.

Prestonettes was not an unfair competition case. It was a trade-mark case wherein the court concluded that the restricted use of the mark in the format permitted by the lower court decree could not deceive the public and was permitted.

In John D. Park & Sons Co. v. Hartman, the court refused to enforce a minimum resale price contract, which was a price fixing device, against a defendant who was not a party to the contract.

■ In Crest, the court on a motion to dismiss held that plaintiff's four causes of action were legally sufficient, including one cause of action alleging exactly the same claim of unfair competition involved in the instant case. Although the defendant in Crest prevailed in a hearing on the merits, it is not authority for granting summary judgment in the instant case. A motion for summary judgment entails more than a motion to dismiss for failure to state a cause of action, but it is not a trial on the merits, and in the summary judgment stage of the proceedings, the burden of proof is on the moving party.

■ With respect to the issue of misrepresentation, defendants contend that the mere offering of plaintiff's professional "Satin-Set" in original containers with original contents and original labels does not constitute any misrepresentation. Plaintiff argues that defendants' offering of this product, which was unfit for consumer use, to the public in retail trade as a consumer item in and of itself constituted a misrepresentation. Under the pleadings and evidence submitted for consideration on this motion, the element of misrepresentation involves a genuine issue of material fact. The plaintiff is entitled to the benefit of all favorable inferences that may be drawn from the evidence. McHenry v. Ford Motor Co. (C.A.6), 269 F.2d 18, supra.

■ Another issue involved is whether plaintiff must make a showing of public deception and specific loss or injury to be entitled to injunctive relief. Plaintiff admittedly can produce no such evidence. But in order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by the defendants' conduct, it being sufficient to show that such deception will be the natural and probable result of his acts, the true test of unfair competition being whether the defendants' acts are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 92, p. 325.

In this case there is a similarity of packaging of professional "Satin-Set" and consumer "Satin-Set" with plaintiff's registered names and trade-marks on both containers, plaintiff has extensively advertised "Satin-Set" hair spray for home use, and defendants have sold an allegedly inferior product at their retail stores without any warning of its allegedly undesirable effect when used by untrained persons. The totality of these circumstances indicate, and the Court concludes, that confusion and deception of the public is reasonably probable and likely to occur and, therefore,

actual proof of such deception is not required.

Defendants admit that proof of injury is not necessary for injunctive relief in palming-off cases, and in Carbonated Beverages, Inc. v. Wisko, 297 Mich. 80, at p. 84, 297 N.W. 79, at page 81, a palming-off case, the court stated:

"Actual deception of any member of the buying public was not shown. But proof of actual deception is not necessary to establish unfair competition, it being sufficient if it appears that deception will be the natural and probable consequence of defendants' acts. Weisman v. Kuschewski, 243 Mich. 223 [219 N.W. 937]."

In 220 Bagley Corp. v. Julius Freud Land Co., 317 Mich. 470, at page 475, 27 N.W.2d 59, at page 61, a confusion of name case, the court said:

"'Actual confusion need not be shown, but it is sufficient that confusion is probable or likely to occur.'"

In Ralston Purina Co. v. Saniwax Paper Co. (D.C.W.D.Mich.), 26 F.2d 941, a case involving defendant's using a label similar to that of the plaintiff, the court at p. 943 said:

"The fact that actual confusion has not been established is not controlling. If casual and unwary purchasers of average intelligence were likely to be deceived, this is sufficient ground for relief. See Nieman v. Plough Chemical Co., 22 F.2d 73, 77 (C.C.A.6)."

It would be an extremely difficult burden to require the plaintiff to show actual public deception and specific loss of trade where plaintiff and defendants are not on the same level of competition as in the instant case. See 148 A.L.R. 12, 53–57, 66–68; 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 14, p. 250.

The product involved in this case is not dangerous to health or life and it is logical and reasonable to assume that the allegedly unsatisfactory result when the product is used by persons other than trained operators would not necessarily come to the attention of plaintiff but might, nevertheless, result in injury to plaintiff's good will.

■ Actual loss of trade is not a prerequisite to injunctive relief where plaintiff's good will and reputation are injured or threatened with injury by a defendant who falsely represents the source or quality of one specific product as being that of another specific product. Vogue Co. v. Thompson-Hudson Co. (C.A.6, 1924), 300 F. 509, cert. den. 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850; 220 Bagley Corp. v. Julius Freud Land Co., supra; Henry Furnace Co. v. Kappelman (1952), 91 Ohio App. 451, 108 N.E. 2d 839; Vickers, Inc. v. Fallon (D.C. E.D.Mich.), 48 F.Supp. 221; and Cheney Bros. v. Gimbel Bros., supra.

The defendants have relied on a host of cases to sustain their position that the plaintiff must show actual public deception and specific loss of trade in order to be entitled to injunctive relief, but this Court concludes that none of these decisions govern the instant case and that only the cases of United-Detroit Theaters Corp. v. Colonial Theatrical Enterprise, Inc., 280 Mich. 425, 273 N.W. 756; American Washboard Co. v. Saginaw Mfg. Co. (C.C.A.6), 103 F. 281, 50 L.R.A. 609; and California Apparel Creators v. Wieder (C.A.2), 162 F.2d 893, 174 A.L.R. 481, merit any discussion.

The Theatres Corp. case only stands for the proposition that a court of equity does not enjoin the commission of criminal acts in absence of proof of irreparable injury to property, a valid but not applicable rule of law in the instant case.

The American Washboard and the California Apparel Creators cases only stand for the proposition that a court of equity will not enjoin alleged unfair competition in a case where there is no showing that one specific product's

source or quality has been represented as that of another product without any proof of public deception and specific loss of trade, which is not the fact situation of the instant case. In other words, the likelihood of public confusion and consequential loss of good will to the plaintiffs in those two cases was remote, if not imaginary, while in the instant case if professional "Satin-Set" is an inferior consumer product, loss of good will to the plaintiff will be real and probable.

Therefore, this Court concludes that proof of actual deception and specific loss of trade or injury is not essential to establish the alleged injury to plaintiff's good will in the instant case. Such injury can be reasonably inferred from the alleged improper acts.

■ Finally, defendants allege as an affirmative defense that plaintiff's contracts with its salon jobbers are illegal per se under Sec. 1 of the Sherman Act and also under the Michigan Restraint of Trade Acts, and that such contracts are utilized by plaintiff for unlawful boycotting, in violation of Sec. 1 of the Sherman Act, which bars the injunctive relief sought by plaintiff in this case. Defendants argue that the purpose of this suit is simply to enforce plaintiff's price-fixing scheme and its unlawful system of distribution. As to this defense, it is sufficient to point out that plaintiff is not seeking the enforcement of such contracts in support of its claim of unfair competition and plaintiff's claim of inducing a breach of such contracts is no longer an issue in this case. Plaintiff also asserts that such contracts are not illegal, and even if illegal, would not be a valid defense to an action to restrain unfair competition. Defendants have not shown by any evidence that plaintiff's distribution system is in violation of the antitrust laws.

In the Federal Trade Commission case of In the Matter of Roux Distributing Co., Inc., FTC Dkt 6636, CCH Tr. Reg. Rep. par. 27,855 (1959), the Commission held that a distributing system based on three different classes of wholesalers who, in turn, were only allowed to sell to certain designated classes of customers, was not an illegal per se violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45, which prohibits unfair methods of competition or unfair acts or practices, nor did this system lessen or restrain trade, without some evidence showing that competition was or would be substantially lessened. In the course of its opinion the Commission said:

"The position of counsel in support of the complaint appears to be that the limitations on resale imposed by respondent on its wholesale customers means that competition is necessarily diminished among such customers and that this is enough to violate Section 5. To accept such reasoning would be to consider resale restrictions of this nature 'unfair methods of competition' in themselves, regardless of their effects on competition. We do not so view the law."

In any event, an antitrust violation does not destroy the participant's right to be protected from unfair competition unless the participant is seeking the aid of a court of equity to perpetuate an illegal system. See Coca-Cola Co. v. Gay-Ola Co. (C.A.6), 200 F. 720; O. & W. Thum Co. v. Dickinson (C.A.6), 245 F. 609.

Defendants' affirmative defense of estoppel is also unsupported by any evidence and is not urged in support of this motion.

It should also be noted that this case does not involve the doctrines of trade disparagement or equitable servitude on chattels extensively discussed by defendants in their briefs.

There is no genuine issue as to any material fact with respect to plaintiff's claim of inducing breach of contract, but there are genuine issues as to certain

material facts concerning plaintiff's claim of unfair competition.

This Court also agrees with the view of Judge Learned Hand set forth in his dissent in the case of California Apparel Creators v. Wieder, supra, an unfair competition case, where this eminent Jurist said (162 F.2d 893, at pp. 902, 903):

"In trials of this kind (unfair competition) the issues are as vagrant and vague almost, if not quite, as in prosecutions under the Anti-Trust Acts. In all cases where the fraud is not stark and bare, the issue tried is how an indefinite number of unknown and unascertainable buyers will understand a false advertisement or label. It is the last kind of action in which to invoke the remedy of summary judgment."

Defendants' motion for summary judgment is granted as to plaintiff's claim as to inducing breach of contract, and is denied as to plaintiff's claim of unfair competition.

An appropriate order may be submitted.