**EASTEX AVIATION, INC.**

v.

**The SPERRY & HUTCHINSON COMPANY et al.**

**Civ. A. No. 5601.**

United States District Court,
E. D. Texas,
Tyler Division.

Nov. 20, 1973.

Jack N. Price, Price, Fisher, Hill, Patton & McLemore, Longview, Tex., for plaintiff.

J. Sam Winters, Donald Scott Thomas, Jr., Clark, Thomas, Denius, Winters & Shapiro, Austin, Tex., for defendant Sperry & Hutchinson Company.

John M. Smith, Smead, Roberts, Harbour, Smith, Harris & French, Longview, Tex., for defendants Royce Barnwell and Gregg County Aviation, Inc.

## MEMORANDUM OPINION AND ORDER

JUSTICE, District Judge.

In this civil action, the plaintiff attacks and the defendant seeks to protect certain business practices of Sperry and Hutchinson Company (hereinafter "S&H"), marketer of the familiar "S&H Green Stamps" that many merchants hand over to their customers as an incentive to do business with them. In applying for a permanent injunction against S&H, the plaintiff relies, *inter alia,* upon Sections One and Two of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2.[1] By way of counterclaim, S&H seeks injunctive relief against the plaintiff on the basis of unfair competition.

### I.  FACTS

The plaintiff, Eastex Aviation, Inc., is a fixed-base operator at Gregg County Airport in Longview, Texas. Among the goods and services it offers to its customers are aviation gasoline, oil, parts, and accessories, flight instructions, charter flights, airplane rentals, and mechanical services. The defendant Gregg County Aviation, Inc., is also a

---

1. Section One of the Sherman Act makes illegal every "contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations". 15 U.S.C. § 1 (1973). Section Two prescribes a penalty for every person "who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations". 15 U.S.C. § 2 (1973).

fixed-base operator at Gregg County Airport, doing business in competition with the plaintiff. Defendant Royce Barnwell is the owner and president of Gregg County Aviation, Inc. At all times relevant to this suit, Gregg County Aviation has been a licensee of defendant S&H, and has dispensed S&H Green Stamps to its customers. The plaintiff, finding that the stamps were giving its competitor a marketing advantage, especially with respect to the sale of gasoline and oil products to corporate aircraft, requested licensing from S&H. It was refused on the grounds that S&H policy forbade the licensing of two similar businesses in such close geographical proximity. The plaintiff then entered into an agreement with another trading-stamp company to dispense its stamps, but this venture was unsuccessful, in part because the other company maintained no redemption center for its trading stamps in the Longview area. The plaintiff also attempted to compensate for its inability to offer stamps by giving its customers a cash discount equivalent to or greater than the cash value of the stamps that might be awarded for their purchases. This marketing ploy also failed, however, mostly because the corporate-owned aircraft that constitute the bulk of the fixed-base operator's business are often piloted by personnel who charge gasoline and oil purchases to the corporation and keep the trading stamps for themselves.

The plaintiff then commenced an activity characterized by the defendants as "pirating" or "bootlegging"—i. e., the purchase of Green Stamps from retailers who had received them from S&H under a license but who were willing to resell them.[2] S&H became aware of the plaintiff's activities and managed to trace the source of its initial supply of "pirated" stamps by noting the serial numbers thereon. S&H then informed the plaintiff's supplier that it was in violation of its licensing agreement, which prohibited disposition of the stamps in any manner except in accordance with its provisions. On threat of losing its license to deal in Green Stamps, the supplier agreed to stop supplying the plaintiff with the stamps. This sequence of events was then repeated with another licensee who was initially willing to supply the plaintiff; that source also disappeared as a result of S&H's actions.

S&H occupies the predominant market position in the Longview area, insofar as trading stamps are concerned. No other trading stamp company maintains a redemption center in the near vicinity of Longview or offers S&H serious competition in this territory.

The plaintiff now requests that this court issue an injunction forbidding S&H to refuse to license it as a distributor of S&H Green Stamps or, in the alternative, an injunction forbidding S&H to interfere with such of its licensees as may wish to resell their supplies of stamps to the plaintiff. S&H has counterclaimed for an injunction forbidding the plaintiff to purchase Green Stamps from S&H licensees.

## S&H LICENSING POLICIES

When S&H agrees to permit a retailer to dispense Green Stamps, their various obligations are set out in a "licensing agreement." S&H's obligations are to provide the retailer with the stamps and other materials and to redeem the books of stamps presented by the retailer's customers for merchandise. S&H sells Green Stamps to these merchants for a price of about $2.65 per 1000 stamps.[3]

2. The plaintiff also managed to procure an S&H sign from a licensee who was not using it; he displayed the sign in a way that could fairly have misled customers into believing that the plaintiff was a licensed S&H distributor. Apparently some incidents ensued (with which the court is not concerned) concerning removal and replacement of the sign.

3. The figures are taken from the Supreme Court's opinion in FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 236, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). They may, of course, have changed since the time when that opinion was written.

The merchants ordinarily present their customers with one stamp for every ten-cent purchase, and 1200 stamps fill one book of stamps; thus, the customer must purchase $120.00 worth of goods to fill each book. The completed books of stamps may be redeemed at "redemption centers" for merchandise, at the rate of approximately $3.00 worth of merchandise per book.

In addition to the stamps, S&H is obligated to provide the retailer with empty stamp collecting books, catalogues of redemption merchandise, and advertising materials, including signs indicating that the merchant is a dispenser of Green Stamps. The agreement sometimes allows the parties to indicate a certain geographical area within which S&H agrees not to license any other retailer in a business primarily of the same type as the business of the licensee (except for those already doing business with S&H). The retailer must obligate himself to advertise the fact that he dispenses Green Stamps; to offer Green Stamps to all of his cash customers at the rate of one per ten-cent purchase; and to refrain from procuring, issuing, or disposing of the stamps in any manner except for the manner provided in the agreement. Finally, both parties stipulate that "property in and title to" the stamps (as well as the books and signs) remains in S&H, even while the stamps are possessed by the retailer or a consumer. The same stipulation appears on the materials supplied to consumers.

S&H pursues its policy of limiting the number of merchants whom it will license in certain geographical areas in order to offer to consumers a clear choice between establishments that offer Green Stamps and establishments that do not. In particular, S&H will sometimes refuse to license a certain retailer on the grounds that a nearby retailer in a similar type of business is already licensed to dispense Green Stamps.[4] S&H contends that this policy is necessary to preserve the value of a Green Stamp license to a retailer. It claims that, were it to make the stamps available to any merchant who requested them, all merchants soon would be stamp dispensers, none would gain a competitive advantage by offering the stamps to customers, and eventually all merchants would cease to use them. S&H's restrictions upon resale or retailer-to-retailer transfer of Green Stamps are apparently directed toward the same purpose.

## II. ISSUES

The court is presented with three questions:

(1) Whether the plaintiff is entitled under the antitrust laws to an injunction forbidding S&H to refuse to license the plaintiff as a distributor of Green Stamps;

(2) Whether the plaintiff is entitled under the antitrust laws to an injunction forbidding S&H to interfere with such of its licensees as may wish to resell their supplies of stamps to the plaintiff; and

(3) Whether under its counterclaim alleging unfair competition S&H is entitled to an injunction forbidding the plaintiff to purchase Green Stamps from S&H licensees.

## S&H'S REFUSAL TO LICENSE PLAINTIFF

The plaintiff contends that by refusing to license it as a distributor of S&H Green Stamps, S&H has committed a violation of Section One of the Sherman Act. As authority for this proposition, the plaintiff relies primarily upon the Supreme Court's decision in United States v. Arnold, Schwinn & Co., 388 U. S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249

---

4. S&H may be bound to refuse by reason of an agreement with a prior licensee, or it may refuse as a matter of its own policy objectives even though not bound to do so by any prior contracts. S&H has not seriously alleged that its refusal to license the plaintiff in this case was dictated by any agreement with an existing licensee; the agreement between defendant Gregg County Aviation, Inc. and S&H contained no provision requiring S&H not to deal with the plaintiff.

(1967). That opinion affords the plaintiff no comfort, however, because of the following language appearing in it:

> . . . a manufacturer of a product other and equivalent brands of which are readily available on the market may select his customers, and for this purpose he may "franchise" certain dealers to whom, alone, he will sell his goods.

Id. at 376, 87 S.Ct. at 1864.

Nor may the case at bar be compared successfully with cases in which a number of suppliers have conspired or agreed to refuse to deal with a retailer. *See, e. g.,* Klor's v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). Here, there is only the unilateral action of S&H, one of several national purveyors of trading stamps, in refusing to do business with the plaintiff. The naming of Gregg County Aviation, Inc., and its president as co-defendants does not create a conspiracy that qualifies as a Sherman Act violation. Were the court to accept the plaintiff's contention in this respect, it would be, in effect, declaring illegal the market devices of franchising and licensing. The Sherman Act does not provide, nor has it been interpreted to mean, that every manufacturer or purveyor of goods must supply every retailer that wishes to carry its products. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

## S&H'S PROHIBITION ON RESALE OF STAMPS

Plaintiff's second contention, that S&H's attempts to prevent or dissuade its licensees from selling or otherwise disposing of their supplies of Green Stamps to the plaintiff constitutes a violation of Section One of the Sherman Act, is principally based upon United States v. Arnold, Schwinn & Co., *supra.* The defendant claims that any inquiry into the possible antitrust violations to be found in this activity is foreclosed by

FTC v. Sperry & Hutchinson Co., 432 F.2d 146 (5th Cir. 1970), modified and remanded, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972).

In that case, the Federal Trade Commission found that S&H had engaged in the practice of attempting, through litigation and threat of litigation, to prevent the operation of so-called "trading stamp exchanges" and related enterprises. These exchanges, established throughout the country, would exchange books of one variety of stamps for books of another, for a fee. Alternatively, some would pay the collector cash for wholly or partially completed books. Other conduct to which S&H objected related to merchants who did not or could not dispense stamps and who sought to compete by offering their customers price discounts in return for stamps. S&H, apparently deciding that these exchange and discount practices posed a threat to its hegemony in the trading stamp market, succeeded in obtaining injunctions against the exchanges and discounters in many localities.

The FTC ruled that the prosecution of these suits by S&H against exchangers and discounters constituted an "unfair trade practice" and issued a cease-and-desist order. In reversing the FTC order, the Fifth Circuit held: (1) the S&H conduct in question violated neither the letter nor the spirit of the antitrust laws; and (2) the FTC has no authority to prevent conduct not constituting a violation of the spirit or letter of the antitrust acts. Before the Supreme Court, the FTC did not challenge the Fifth Circuit's first ruling—that S&H's conduct did not violate the spirit or letter of the antitrust acts—but appealed only the question of the scope of FTC authority. Accordingly, the Supreme Court, while reversing the Court of Appeals on the authority question, stated that it "intimated no opinion" on the first issue.[5] 405 U.S. at 239, 92 S.Ct.

---

5. On remand to the FTC, the S&H case was settled by consent decree, with one Commis-

sioner dissenting from the settlement. In the Matter of the Sperry & Hutchinson Co.,

898. The Supreme Court did, however, indicate that a possibly feasible antitrust theory upon which S&H's conduct could be found illegal had been ignored at all stages of the case. 405 U.S. at 247–248, n. 6, 92 S.Ct. 898. That theory, first articulated in the *Schwinn* case, is now urged before this court; it is that "if the manufacturer parts with dominion over his product or transfers risk of loss to another, he may not reserve control over its destiny or the conditions of its resale". 388 U.S. at 379, 87 S.Ct. at 1865.

The Fifth Circuit's unappealed ruling that S&H's conduct was consistent with the antitrust laws does not preclude this court's inquiry in the case at bar for two reasons. First, the conduct at issue in the FTC case was not identical to the conduct at issue here. The FTC case considered the legality of S&H's seeking injunctions against the actions of exchanges and discounters; here, S&H's self-help attempts to prevent an enterprise from gaining access to Green Stamps are in issue. Moreover, the Supreme Court held in FTC v. Sperry & Hutchinson: "The efforts of some retailers to reissue S&H stamps are not involved in this case. The FTC explicitly left S&H free to seek injunctions against reissuance." 405 U.S. at 237, n. 3, 92 S.Ct. at 902. The practice of seeking injunctions against the reissuance of stamps by retailers—reissuance being the situation before this court—was thus not before the Fifth Circuit.[6] Second, the argument based upon the *Schwinn*

doctrine was not urged before the Fifth Circuit; consequently, this court is entitled to entertain it.

In *Schwinn*, the Supreme Court declared certain of the marketing practices of a bicycle manufacturer to be violative of the Sherman Act. The manufacturer, Schwinn, designated certain retailers as Schwinn franchisees and sold bicycles only to these franchisees or to one of twenty-two Schwinn distributors. The distributors were allowed to resell the bicycles only to the licensed franchisees, and the retailer-franchisees were prohibited from selling to any other retail establishments. The effect of these restrictions was to prevent the retail sale of Schwinn bicycles by any but Schwinn-approved retailers. Schwinn also consigned some bicycles to its distributors for sale on a commission basis, and it retained title to bicycles marketed in this manner until their sale to the consumer.

The Supreme Court found that the manufacturer's restrictions upon resale of bicycles that had been finally sold to retailers constituted an unreasonable restraint of competition in violation of Section One of the Sherman Act, holding, in effect, that Schwinn could impose any restrictions it wished upon the sale of bicycles consigned to distributors for sale, but that it could not limit the class to whom bicycles could be resold by distributors or retailers who had finally purchased them from Schwinn. The Court drew its operative distinction be-

---

a Corporation, FTC Docket No. 8671, Decision and Order Relating to Count III of the Complaint (September 18, 1973). The agreement required S&H to offer to redeem its stamps for cash if presented in minimum amounts of 300. It further required S&H to cease and desist from acting in concert with any other trading stamp company to prevent the operation of trading stamp exchanges and to apply to vacate every injunction against the operation of trading stamp exchanges issued in the last twelve years.

6. There does appear in the Fifth Circuit opinion some language indicating that it considered retailers who attempted to acquire stamps for reissuance in the same category

as other so-called "traffickers". *See* 432 F. 2d at 149. This is puzzling in light of the Supreme Court's assertion that reissuance was not in question in the case. One possible explanation is that there are two types of "reissuers": those retailers who acquire stamps from customers by offering cash discounts for them and who then reissue them to other customers, and those retailers who supply unlicensed retailers with stamps that they have acquired from S&H pursuant to a licensing agreement. In any event, this court does not consider that the Fifth Circuit's ruling in the FTC case requires it to rule against the plaintiff here, for all the reasons mentioned in the text.

**874**

tween "the situation where the manufacturer parts with title, dominion, or risk with respect to the article, and where he completely retains ownership and risk of loss." 388 U.S. at 378–379, 87 S.Ct. at 1865. The court directly held that an attempt to impose restraints upon resale in the former situation is a per se violation of the antitrust laws, "so obviously destructive of competition that [its] mere existence is enough." Id. at 379, 87 S.Ct. at 1865.

The defendant, S&H, raises two serious objections to the applicability of the *Schwinn* doctrine to the instant case. First, it argues that essential differences between bicycles and trading stamps make the doctrine inapposite to the latter. Second, it urges that the printed warning disseminated with the stamps to both retailers and consumers, stating that S&H retains "property in and title to" the stamps at all times, removes the stamps from the ambit of the rule.

■ S&H insists that a trading stamp is not a tangible like a bicycle but, rather, a chose in action or intangible. This contention is unexceptionable. Sperry & Hutchinson v. Hertzberg, 69 N.J.Eq. 264, 60 A. 368 (Ct.Chancery N.J.1905). It urges further, however, that a trading stamp, as an intangible or chose in action, is not governed by the *Schwinn* rule or other legal doctrines applicable to tangibles, citing Bitterman v. Louisville & N. Ry. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171 (1907) and Rance v. Sperry and Hutchinson Co., 410 P.2d 859 (Okl.1965), cert. den., 382 U.S. 945, 86 S.Ct. 395, 15 L.Ed.2d 353 (1965).

With deference, this court does not consider those precedents to be controlling, since both were decided prior to the *Schwinn* decision. Moreover, exhaustive examination of the *Schwinn* decision reveals no language whatever that suggests that the doctrine there articulated is limited to bicycles or other tangibles.[7]

In a very early reported case dealing with trading stamps, Chancellor Stevenson accurately described their substance, as follows:

> The thing of value . . . is not the piece of paper and the ink thereon which constitutes physically the trading stamp, but the absolute property right which the stamp represents and evidences . . . [The] holder [of trading stamps] owns what in a court of equity is practically equivalent to a negotiable warehouse receipt—practically the same thing as a chattel. Sperry & Hutchinson v. Hertzberg, *supra* at 370, 374.

*Cf.* Landy v. Nicholas, 221 F.2d 923, 929–931 (5 Cir. 1955).

■ Since the trading stamps are merely representative of the merchandise that can be redeemed by them, any impediment attached to the free transfer of the stamps is the counterpart of a limitation on the alienability of the merchandise—an unreasonable restraint of competition of the type denounced in *Schwinn*. S&H's election to conduct its enterprise by the convenient system of scrip instead of the cumbersome process of supplying merchandise directly to retailers for transfer to their customers cannot shield it from the operation of the antitrust laws.

7. S&H's suggestion that "intangibles" are exempt from the operation of the antitrust laws will have a hard time slipping by the available precedents. *See, e. g.,* Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) (securities market subject to antitrust regulation); United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (insurance business subject to antitrust regulation); Pacific Seafarers, Inc. v. Pacific Far East Line, Inc., 131 U.S.App.D.C. 226, 404 F.2d 804 (1968), cert.

denied, 393 U.S. 1093, 89 S.Ct. 872, 21 L. Ed.2d 784 (1969) (service industries subject to antitrust regulation); accord, United States v. Pennsylvania Refuse Removal Service, 242 F.Supp. 794 (E.D.Pa.1965), aff'd, 357 F.2d 806 (3d Cir.) cert. denied, 384 U.S. 961, 86 S.Ct. 1588, 16 L.Ed.2d 674 (1966); *see also* United States v. American Medical Ass'n, 28 F.Supp. 752 (D.D.C.), rev'd on other grounds, 72 App.D.C. 12, 110 F.2d 703, cert. denied, 308 U.S. 599, 60 S.Ct. 131, 84 L.Ed. 502 (1939) (professional occupations subject to antitrust regulation).

█ S&H also contends that it expressly reserves title to the stamps at all times and that it may, therefore, impose conditions upon the disposition that retailers make of their stamps under the Schwinn exception for items as to which manufacturers retain title. This argument does not survive close examination. At most, S&H can attempt to reserve an interest in the "pieces of paper and the ink thereon" that constitutes the trading stamps. Any more extensive claim is unavailing, given the equitable property rights inherent in the possession of the stamps, whether by the retailer or by his customers.

Yet S&H cannot successfully make even that limited claim by unilateral declaration in the presence of substantive facts to the contrary. The language of Schwinn is disjunctive, requiring application of its rule whenever a manufacturer parts with "dominion, control *or* risk" with respect to an item furnished to retailers. It would appear that a Green Stamp in the hands of a retailer or customer is subject to his dominion and control. Furthermore, the evidence reveals unequivocally that one in possession of a Green Stamp bears the risk of its loss or destruction; S&H does not replace a stamp that a retailer or customer has lost. Accordingly, S&H's efforts to escape the *Schwinn* rule by informing retailers and customers that it reserves title in and property to the stamps are nugatory; the possessor of a Green Stamp has all of the incidents of title that are relevant in the present context.

█ In summary, there appears no reason to exempt S&H from the consequences of the *Schwinn* decision. S&H cannot legally forbid the retailers who purchase stamps from it to resell them to the plaintiff or to any individual or establishment, for such restraints constitute per se violations of the Sherman Act.

The plaintiff's injuries are imminent and irreparable, and have no adequate remedy at law. Accordingly, the plaintiff is entitled to an injunction prohibiting S&H from interfering with any S&H licensees who wish to resell or otherwise transfer Green Stamps to plaintiff.

## COUNTERCLAIM FOR INJUNCTIVE RELIEF

█ S&H counterclaims that it is entitled to an injunction to prevent the plaintiff from interfering with its contractual relationships with its licensees by persuading them to sell stamps to it in violation of their agreements with S&H. Since S&H cannot legally enter into such agreements with its licensees, it follows that S&H is not entitled to an injunction on that ground. To grant such an injunction would be to allow the "seeking [of] the aid of a court in equity to perpetuate an illegal system." Revlon, Inc. v. Regal Pharmacy, Inc., 29 F.R.D. 169, 177 (E.D.Mich.1961). It may be that the plaintiff's unauthorized use of S&H's trademark sign constitutes a violation of S&H's trademark rights, but that claim has been neither raised nor argued before this court. Accordingly, it is

Ordered that the defendant Sperry and Hutchinson Company be, and it is hereby, permanently enjoined from conditioning its dealings with any retailer upon the retailer's agreement not to resell stamps acquired from S&H to the plaintiff and from terminating or threatening to terminate its relationship with any of its licensees for the reason that the licensee has resold stamps acquired from S&H to the plaintiff. It is further

Ordered that defendant's counterclaim be, and it is hereby, dismissed.